IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHEILA FOSTER,** | § § | |
| **PLAINTIFF,** | § § | |
| VS. | § § | CIVIL ACTION NO.: |
| | § § | |
| **UNITED AIRLINES, INC.** | § § § § § § § § | |
| **DEFENDANT.** | § | **JURY DEMAND REQUESTED** |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, SHEILA FOSTER ("Plaintiff"), through counsel, and alleges the following against Defendant, UNITED AIRLINES, INC. ("Defendant"). In support of her causes of action, Plaintiff would show this Honorable Court and Jury the following:

### NATURE OF CASE AND CONDITIONS PRECEDENT

1. This is a proceeding for civil enforcement of lawful rights secured by the American with Disabilities Amendments Act of 2008, prohibiting certain unlawful employment practice such as discrimination and Workplace.

2. All conditions precedent to this Honorable Court's jurisdiction under The Americans with Disabilities Act Amendments Act of 2008, as amended, has occurred, or has taken place. Plaintiff's Complaint of Discrimination was filed with the Equal Employment Opportunities Commission

("EEOC"), within three hundred (300) days of the actionable acts complained of herein. Further, Plaintiff's Original Complaint is being filed within ninety (90) days of Plaintiff's receipt of her decision from the Equal Employment Opportunity Commission, office of Federal Operations.

3.  On October 20, 2018, Plaintiff filed an Equal Employment Opportunity Commission (EEOC) complaint of discrimination and retaliation against Defendant, United Airlines, Inc. as Charge No. 460-2019-004477.

4.  On March 20, 2019, Plaintiff filed an amendment to her charge to add Retaliation after her employment was terminated on February 26, 2019.

5.  On August 24, 2020, the EEOC issued a formal dismissal and a Notice of Rights to Sue.

6.  Plaintiff is now filing this case in the U.S. District Court for Southern District of Texas.

7.  Plaintiff seeks redress for discriminatory practice by Defendant against her in violation of The Americans with Disabilities Act Amendments Act of 2008. Plaintiff alleges discrimination based on a disability when she was subjected to a hostile work environment prior to and subsequent to the initial complaint she made against her supervisors and upper management.

## JURISDICTION AND VENUE

8.  The jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. § 1331 because the issues in this case raise federal questions under The Americans with Disabilities Act Amendments Act of 2008. The jurisdiction of this case is to secure the protection of redress for deprivation of rights guaranteed by Federal Law, which rights provides for injunctive and other relief for violation of civil rights and discrimination in employment.

9.  United Airlines, Inc., may be served through their registered agent.

10. Venue is proper in the Southern District of Texas, Houston Division because the causes of action alleged accrued within said district. This court has jurisdiction over the causes of action

alleged by Plaintiff pursuant to The Americans with Disabilities Act Amendments Act of 2008 ("The Act").

## PARTIES

11.     Plaintiff, SHEILA FOSTER, is an individual and resident of Houston, Texas. Plaintiff suffers from a physical impairment that substantially limits one or more of her major life activities. Plaintiff is a member of a protected group that falls within the broad definition of "disability," and was at all relevant times an employee within the meaning of the applicable statute.

12.     Defendant, UNITED AIRLINES, INC., is a Delaware Corporation duly authorized and qualified to do business in the State of Texas. Defendant may be served with citation by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900 Dallas, Texas 75201-3136.

## VICARIOUS LIABILITY-RESPONDEAT SUPERIOR

13.     Whenever in this pleading it is alleged that Defendants did any act or thing, or failed to do any act or thing, it is meant that Defendants' officers, owners, servants, agents, employees, or representatives, workers including but not limited to Gilbert Green, Kathy Page, Stephanie Stanky, Kim Kurr, Gwen Taylor, and/or Tanya Patterson did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at Defendants' and/or in the furtherance of Defendants' interests, or with the full authorization, permission, tolerance, and/or ratification of Defendants were done by an authorized member of management of Defendants or was done in the normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendants' officers, owners, servants, agents, and/or employees.

**FACTUAL BACKGROUND**

14. Defendant is an employer within the meaning of ADA Amendments Act of 2008, in that it always employed the requisite number of employees relevant to this complaint.

15. Plaintiff, SHEILA FOSTER is a plaintiff with a disability engaged in EEO protected activity and was employed by Defendant, UNITED AIRLINES, INC. During all the alleged discriminatory actions complained of in this complaint, the Agency was aware of Plaintiff's Equal Opportunity ("EEO") activity.

16. In October of 2012, Plaintiff started her employment in the transportation department with Chelsea Foods, a division of United Airlines Predecessor, Continental Airlines. During that time, Plaintiff injured hers knee when she was coming down on the bed of a work truck. Her injury was deemed and On Job Injury (OJI) and was placed on disability. Once the extent of her injuries was determined, she was informed by her doctor that she could not return to transportation because of the extensive limitations caused by her injury. Her injuries became more severe, when other areas of her body began to experience pain because of the injury. When Plaintiff returned to work, she received reasonable accommodations from Chelsea. Plaintiff was then transferred into a production coordinator position and eventually was transferred to the airport division as a Part-Time Customer Service Agent.

17. In May of 2015, Plaintiff interviewed for her new position with the airport, but there was no mention of "Mandatory Overtime." When discussions of a Union Contract began, Plaintiff started discussion with Gilbert Greene and Kim Kerr in upper management. She was granted accommodations for her injury by allowing her not work "Mandatory Overtime." Plaintiff was also excused from work due to other medical reasons of which she was to provide a note to her supervisors when necessary. However, Plaintiff started receiving "points" on record for missing

work. Plaintiff had no choice but to miss work because certain medications did not allow her function properly while at work. Plaintiff then had to visit Kim Kerr's office to get the points erased and the matter was resolved. Plaintiff's Doctor restricted her to work a certain number of hours a day. Due to her restrictions, Plaintiff could call staffing to let them know when she was leaving for the day.

18. In August of 2015, Defendant placed Plaintiff on workers' compensation when she had 2 surgeries on her shoulder, spine, and back. When Plaintiff wanted to return to work with partial restrictions, Defendant would not let her. Instead, Defendant placed her on "Extended Illness Status." This was detrimental to Plaintiff because her "EIS" was paid through sick hours and once her sick hours ran out, she would be eligible for termination. Plaintiff has been out of work for almost 2 ½ years.

19. In January of 2018, Plaintiff was eager to return to work and sends in all of disability paperwork. Defendant sets a Reasonable Accommodations meeting to assess Plaintiff's restrictions and determine when she can return to work. During this meeting, there was still no mention of mandatory overtime. When Plaintiff was hired under her contract with Continental, there was no mention of mandatory overtime and it was notated in her personnel file. Her old supervisors: Stephanie Stanky, Gilbert Green and Kim Kerr signed off her accommodations of no mandatory overtime. However, Plaintiff's personnel file went missing. During this time Kathy Page becomes the new director of Human Resources. Gwen Taylor, another administrator, told Plaintiff that she could leave before mandatory overtime was called. However, Kathy Page and plaintiff had a disagreement because Plaintiff had no file or additional employee to corroborate this agreement.

20. In March of 2018, Plaintiff meets with upper management during another reasonable

accommodations meeting. In the meantime, Plaintiff goes to get her badges cleared for training. Unfortunately, two administrators: Rico Wallis and Gwen Taylor come and pull Plaintiff out of her training because they alleged her badges were not cleared. Plaintiff suffered embarrassment from being pulled away in front of everyone. Plaintiff is them prevented from attending the rest of the meeting. This is problematic because Gwen Taylor was at the meeting when Plaintiff's badges were cleared. Plaintiff then calls Ms. Taylor two days later to resolve the issue and Ms. Taylor informs her that she will call the corporate office to take care of the issue. Plaintiff then calls the corporate office to discover that Ms. Taylor had not called to straighten out the issue. Plaintiff then files a formal complaint against Ms. Taylor. Plaintiff then sends her paperwork to the corporate office herself and got her badges cleared. Plaintiff was then passed onto the next phase of training even though she had missed two days.

21. In June 2018, another reasonable accommodations meeting was called. During this meeting, it was determined that Plaintiff only had to work 50% of her shift within a 2-week period. Plaintiff was on disability at the time can could only work 6 hours a day, which is why she stayed part-time. However, when United Airlines unionized another accommodations meeting was called and Plaintiff again was informed that she did not have to work "mandatory overtime."

22. In August of 2018, Plaintiff worked mandatory overtime only because it was called during her 6-hour shift and stayed within her 6 hours. The Defendant is supposed to give its employees two hours' notice prior to calling mandatory overtime and it is only supposed to called during a catastrophic event. Plaintiff stayed past her shift a second time, but only to finish up with a customer before she could leave work.

23. In October of 2018, bidding starts for job shifts. Plaintiff was unable to bid on the computer, so she called in to bid for a shift in "Zone 7." Kathy Page had a meeting with the supervisors in

Zone 7 to discuss Plaintiff's excusal from mandatory overtime. However, Ms. Page neglects to inform all the supervisors. Because of this, Plaintiff had a disagreement with a supervisor when she tried to leave after her 6-hour shift. The issue was eventually resolved, but the supervisor informed Plaintiff that he was not told about her restriction. However, Plaintiff still had trouble leaving her shift when the supervisors refused to sign her paperwork at the end of her 6-hour shift. Another accommodations meeting is called, and the administrators are concerned that Plaintiff can no longer do her job because she cannot stay past her 6-hour shift. In the meantime, the administrators aim to transfer her to another department. However, Plaintiff did not want to be transferred. As a result, the company placed her on EIS again and she was off work. This was problematic because Plaintiff only had one month of EIS left, which the administrators new at the time. To keep her job and her restrictions, Plaintiff began to apply for other positions within the company. However, Plaintiff was only referred to full-time positions that her supervisor knew she was ineligible for. Plaintiff sent in her resume for multiple positions and never heard back, only to be told that "she did not qualify" in an email message.

24.  In November of 2018, Plaintiff discovers that her personnel file is still missing. Plaintiff schedules a meeting with Michelle Brown, who is the superior to Kathy Page. The issue of "mandatory overtime" is discussed yet again, but Ms. Brown and Ms. Page claim that Mr. Green never informed them that Plaintiff was excused from it. Plaintiff then receives a letter that she will be terminated on December 4th, 2018. However, Ms. Page called another accommodation meeting with Plaintiff and two union reps present. Ms. Page and Ms. Taylor then admit to having knowledge of Plaintiff's excusal from "mandatory overtime" from Mr. Green. Ms. Page then informs Plaintiff that if her doctor can change her paperwork to reflect an 8-hour shift instead of 6, then she may return to work. Plaintiff's doctor refuses to do so because he believes that such an

act would be falsifying information. Plaintiff's doctor does write a note stating that there is no reason why Plaintiff should be off work.

25.     In January 2019, another accommodations meeting is called, and Plaintiff's termination is extended to January 23rd, 2019. Plaintiff was not invited to this meeting at first, but then receives a request to join the meeting from Ms. Page at the last minute. January 3rd comes and goes and Plaintiff's EIS had officially expired.

26.     In February 2019, Plaintiff receives a letter that she ineligible for reasonable accommodations because she can perform the "essential functions" of her job. Plaintiff then receives a letter from Tanya Patterson at the corporate office that she is officially terminated.

## CAUSES OF ACTION

### A.  *Disability Discrimination, and Hostile Work Environment*

27.     Plaintiff repeats and re-alleges all the facts set forth above.  Plaintiff contends that by the above described actions of Defendants and or their agents and or/employees violated The ADAA of 2008 by discriminating against the Plaintiff on account of her disability was a motivating factor for adverse treatment to which she was subjected.

28.     Plaintiff alleges that he is (1) a member of a protected class (disability); (2) that she received disparate and hostile treatment toward her while on the job; (3) that the harassment and discrimination was based on her membership in a protected class (disability); (4) that the harassment was sufficiently severe, persistent, and pervasive affecting a term or condition of her employment.; (5) that the harassment had the purpose or effect of unreasonably interfering with Plaintiff's work performance; (6) that the harassment had the purpose or effect of creating a dangerous, hostile, and offensive work environment; (7) that Plaintiff's supervisors (Kathy Page and Gwen Taylor) were responsible for the harassment; and (8) that Plaintiff took advantage of

any preventative or corrective opportunities provided by her employer or avoid harm otherwise.

29. Plaintiff was treated disparately after the change in management because of her disability. Plaintiff exhausted all administrative remedies including filing a formal complaint, reaching out to the corporate office, and organizing several meetings to resolve the issues. Unfortunately, Plaintiff was subjected to harassment/ hostile work environment when Ms. Page knew of her accommodations and did not tell her supervisors. Ms. Page and Ms. Taylor continuously lied about not knowing Plaintiff's restrictions. Ms. Taylor and Ms. Page perpetuated the mistreatment when they tried to force Plaintiff into working mandatory overtime, knowing she had restrictions. Defendant was aware of the harassment/ hostile work environment. Therefore, the agency was liable.

30. Plaintiff was intentionally given "points" on her record even though the administrators knew of her accommodations. Plaintiff was also negatively impacted on her ability to find another position within the company when the company kept played her on EIS leave when she only had a month left for that leave. Defendant knew that this would lead Plaintiff to termination and instead of accommodating her, they let her EIS expire so that they could terminate her.

31. Due to the intolerant actions of the Defendants, Plaintiff has suffered damages for which she now sues seeking actual damages, including:

    a. Past lost pay;

    b. Future lost pay;

    c. Front pay;

    d. Future loss of benefits;

    e. Past mental anguish;

    f. Future mental anguish;

    g. Past emotional pain and suffering;

    h. Future emotional pain and suffering;

    i. Past inconvenience;

    j. Future inconvenience;

    k. Past loss of enjoyment of life;

    l. Future loss of enjoyment of life;

    m. Reduction in her standard of living for which he seeks compensatory damages in an amount to be determined by the court and jury; and

    n. All other damages allowed by law, including reasonable attorney's fees.

### B. *ADAA Workplace Retaliation*

32. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth. Plaintiff was always engaged in a protected activity by requesting reasonable accommodations for her disability.

33. Each act of retaliation is in violation of The ADAA of 2008's anti-retaliation provision, based on but not limited to the following:

    a. After requesting these reasonable accommodations, Plaintiff was wrongfully placed on EIS leave without pay even though the company knew she did not have enough hours to sustain her EIS leave. Plaintiff was subsequently wrongfully terminated and retaliated against leading to her termination.

    b. When Plaintiff was unable to keep her position due to her restrictions, she was then directed to apply for other positions within the company. Plaintiff's administrators purposely directed her towards full-time positions and the purposely did not promote her. Then the administrators cited that Plaintiff was "not qualified" for the position.

c. Plaintiff also had to endure multiple meetings to assess her "accommodations." These accommodations were the exact same restrictions as before and were made to harass plaintiff and prevent her from returning to work.

d. Plaintiff faced many challenges acquiring accommodations that would suit her restrictions. However, when she tried to resolve these issues, she was met with much disdain and unsupportiveness. When plaintiff, started to reach out to the cooperate office for help with her issues, her administrators treated her disparately for trying to go over their heads.

e. Plaintiff was threatened termination multiple times because of the expiration of her EIS leave even after the company placed her on this leave because she could not work more than 6 hours a day.

## ATTORNEY'S FEES

34. Pursuant to The ADAA of 2008, Plaintiff sues Defendants for all reasonable attorney's fees and cost incurred in the prosecution of this suit.

## DAMAGES

35. Defendants' conduct constitutes violations of statutory law. Such unlawful conduct seriously affected Plaintiff in her occupation. Because of Defendants' unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety, and stress along with other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies, and procedures of Defendants. Plaintiff seeks all general, special, and incidental and consequential damages in an amount to be proved at trial. Because of Defendants' unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorneys to represent her in these causes of actions.

36. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

## JURY TRIAL DEMAND

37. Plaintiff demands a jury trial in this case.

## PRAYER

38. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully invokes the remedial powers of the court, and prays that Defendants be cited to appear herein, and after trial by jury, this Court enters a judgment:

   a. Declaring that the acts and practices complained of herein are in violation of the above applicable statutes;

   b. Enjoining and permanently restraining these violations of the above applicable statutes;

   c. Defendant be ordered to compensate Plaintiff for all losses and award her compensatory damages, reimburse, and make Plaintiff whole for any and all past and future lost wages and benefits Plaintiff would have received had it not been for Defendants' actions and inactions including, but not limited to, past and future lost pay, future loss wages, front and back pay and benefits, training, promotions, and seniority.  Plaintiff further asks that she be awarded all benefits illegally lost from the present to the date of his retirement;

   d. Defendant be ordered to compensate Plaintiff for past and future mental anguish and humiliation;

   e. Awarding Plaintiff pre-judgment and post-judgment interest at the maximum

      legal rate;

f.   Punitive damages in an amount above the minimum jurisdictional limit of the Court;

g.   Reasonable attorney's fees, with conditional awards in the event of appeal;

h.   The court grants such additional equitable and legal relief as is proper and just; and

i.   The court award to Plaintiff costs and expenses of this action and award to Plaintiff reasonable attorney fees according to law.

Respectfully submitted,

THE COX PRADIA LAW FIRM PLLC

By: **/s/ Troy J. Pradia**
Troy J. Pradia
Texas Bar No. 24011945
Fed Bar No.30260
1415 N. Loop West, Ste. 200
Houston, Texas 77008
Tel. 713.739.0402
Fax 713.752.2812
ATTORNEY FOR PLAINTIFF
